7 F.3d 1561
 Prod.Liab.Rep. (CCH) P 13,714
Fernando BENITEZ and Alina Benitez, His Wife, Plaintiffs-Appellees,
v.
STANDARD HAVENS PRODUCTS, INC., a foreign corporation,
Defendant/Third Party Plaintiff-Appellant.
 No. 92-4470.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 29, 1993.
 
 Kathleen M. O'Connor, Thornton, David, Murray, Richard & Davis, P.A., Miami, FL, for Standard Havens Products, Inc.
 G. William Bissett, Hardy & Bissett, P.A., Miami, FL, for Benitez.
 Appeal from the United States District Court for the Southern District of Florida.
 Before EDMONDSON and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO ARTICLE 5, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION.
 
 
 2
 TO THE SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:
 
 
 3
 This case comes to the United States Court of Appeals for the Eleventh Circuit on appeal from the United States District Court for the Southern District of Florida. It involves a question of Florida law which is determinative of the cause, but unanswered by controlling precedent of the Supreme Court of Florida. We therefore certify this question for resolution by the highest court of Florida.
 
 
 4
 Fernando Benitez, an employee of Community Asphalt Corporation, was injured at work on June 5, 1987, when his leg was caught and partially amputated by an auger mechanism situated at the bottom of a pollution control apparatus known as a "baghouse." The baghouse was designed and manufactured by Standard Havens Products, Inc. It operates like a giant vacuum cleaner, collecting in fourteen-foot long fabric bags the dust produced during the manufacture of asphalt. The bags are "pulsed" to remove the accumulated dust which falls into a v-shaped hopper. At the bottom of the hopper is a thirty-foot long auger, much like a horizontal screw, which removes the collected debris. Benitez was injured after he entered the baghouse, with the auger mechanism running, to clean the dust from the inside walls of the baghouse. As Benitez was raking debris from the walls, he stepped off of the screen panels covering the opening to the auger, causing his foot to be pulled into the spinning auger.
 
 
 5
 Benitez and his wife brought this products liability action against Standard Havens, and Standard Havens brought in Benitez's employer, Community Asphalt, as a third-party defendant. Community Asphalt has been dismissed from this appeal on joint motions by Standard Havens and Community Asphalt. Benitez argued at trial that Standard Havens was negligent in designing the baghouse without proper safety measures to prevent an accident such as his, including an adequate protective screen over the auger mechanism and proper warnings of the dangers presented by the mechanism. Benitez also claimed that the defects to the baghouse rendered it unreasonably dangerous and, therefore, Standard Havens was strictly liable for his injuries caused by those defects.[1] Standard Havens defended that Benitez's own negligence was the cause of the injuries and that Benitez had knowingly misused the baghouse and assumed any risk of injury. Standard Havens presented evidence that Benitez's employer had in place a policy, of which Benitez was fully aware, that instructed employees to "lockout" motorized equipment like the baghouse auger mechanism before doing work on or near such equipment. This policy was consistent with the procedures outlined in the baghouse operations and maintenance manual provided by Standard Havens. Benitez acted in contravention of the lockout policy, intentionally turning on the auger before entering the baghouse.
 
 
 6
 At the close of all of the evidence, the district court instructed the jury on the law of products liability premised on negligent design or manufacture as well as strict liability, and further instructed the jury relating to Standard Haven's defenses of comparative negligence, product misuse, and assumption of risk.
 
 
 7
 Following its instruction on Benitez's negligent design and manufacture theory, the court instructed the jury on Standard Havens's comparative negligence defense:
 
 
 8
 The Defendant contends that the Plaintiff was himself negligent and that such negligence was a legal cause of his own injury. This is a defensive claim and the burden of proving that claim, by a preponderance of the evidence, is upon the Defendant who must establish:
 
 
 9
 First: That the Plaintiff was also "negligent;" and
 
 
 10
 Second: That such negligence was a "legal cause" of the Plaintiff's own damage.
 
 
 11
 If you find in favor of the Defendant on this defense, that will not prevent recovery by the Plaintiffs, it only reduces the amount of Plaintiffs' recovery.
 
 
 12
 The court then instructed on Benitez's strict liability claim. Included in that instruction was the following: "A product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary person would expect when used as intended or in a manner reasonably foreseeable by the manufacturer or the risk of danger in the design outweighs the benefits." The court then instructed on Standard Havens's defenses to Benitez's strict liability claim:
 
 
 13
 The Defendant contends that FERNANDO BENITEZ's injury occurred as the result of his knowing "misuse" of the Alpha/Mark III Baghouse. A manufacturer is entitled to expect a normal use of his product. If the Plaintiff's injury occurred because he knowingly used the product in a manner for which the product was not made or adapted, and not reasonably foreseeable to the Defendant, then the Plaintiff cannot recover. It is for you to decide whether the Plaintiff was knowingly using the product at the time of the accident in a manner for which the product was not made or adapted, and whether this use was reasonably foreseeable to the Defendant.
 
 
 14
 If you find that the Defendant has established this defense by a preponderance of the evidence, then your verdict will be for the Defendant on the defective design and manufacture claim.
 
 
 15
 The Defendant also contends as another defense, that the Plaintiff was negligent and that such negligence was a contributing legal cause of his own injury. Specifically, Defendant alleges that:
 
 
 16
 (1) the Plaintiff intentionally operated the Alpha/Mark III Baghouse contrary to its operation and its maintenance manual, and
 
 
 17
 (2) that FERNANDO BENITEZ assumed the risk of injury because there was a dangerous situation or condition which was open and obvious, the Plaintiff knew of this dangerous situation, the Plaintiff voluntarily exposed himself to this danger and was injured thereby.
 
 
 18
 Following another recitation of standard negligence law, the court again instructed the jury on the principles of comparative negligence as a defense: "If you find in favor of the Defendant on the defense of comparative negligence, that will not prevent recovery by the Plaintiff, it will only reduce the amount of Plaintiff's recovery."
 
 
 19
 The case was then sent to the jury with a verdict form containing special interrogatories, which the jury answered as follows:
 
 
 20
 1. Was there negligence on the part of the Defendant, STANDARD HAVENS PRODUCTS, INC., in designing, manufacturing and assembling the Alpha/Mark III Baghouse which was a legal cause of injury or damage to the Plaintiffs?
 
 Yes X No
 
 21
 2. Was the Alpha/Mark III Baghouse, designed, manufactured and sold by the Defendant, defective when it left the possession of the Defendant and such defect a legal cause of injury or damage sustained by the Plaintiffs[?]
 
 Yes X No
 
 22
 If both of your answers to questions 1 and 2 are "no," your verdict is for the Defendant, and you should not proceed further except to date and sign this verdict form and return it to the courtroom. If your answer to question 2 is "yes," please answer question 3.
 
 
 23
 3. Did FERNANDO BENITEZ knowingly misuse the Alpha/Mark III Baghouse in a manner for which the product was not made and not foreseeable to the Defendant which was a legal cause of his injury?
 
 Yes X No
 
 24
 If either of your answers to question 1 or 2 was "yes," please answer question 4.
 
 
 25
 4. Was there any negligence on the part of FERNANDO BENITEZ, which was a legal cause of the Plaintiffs' damage or injuries[?]
 
 Yes X No
 
 26
 The jury determined that Fernando Benitez's total damages were $1,500,000.00 and that Alina Benitez's total damages were $250,000.00. Because the jury apportioned 70% fault to Standard Havens and 30% to Benitez, the court entered judgment on the jury's verdict, awarding $1,050,000.00 to Fernando and $175,000.00 to Alina.
 
 
 27
 On appeal, the dispute centers on whether the jury's finding that Benitez knowingly misused the baghouse in a manner unforeseeable to Standard Havens barred recovery on the claim of negligent design or manufacture. The court's charge to the jury instructed on misuse as a defense only to Benitez's strict liability claim, and the verdict form given to the jury was consistent with those instructions. In addition, a brief colloquy between counsel for Standard Havens and the court, during a conference immediately preceding the parties' closing arguments, confirms the court's assumption that knowing misuse would act to bar only the strict liability claim:
 
 
 28
 [DEFENSE COUNSEL]: If you look at question number 3, on misuse, it doesn't tell the jury what to do if they answer it no, or yes.
 
 
 29
 THE COURT: Well, I don't think we need to tell them that.
 
 
 30
 [DEFENSE COUNSEL]: If they answer it no, it is a verdict for the [plaintiff]. If they answer, yes, there was misuse, it was a verdict for the [defendant].
 
 
 31
 [PLAINTIFFS' COUNSEL]: Not on negligence.
 
 
 32
 THE COURT: It is a verdict for the defendant on the claim of strict liability.
 
 
 33
 [DEFENSE COUNSEL]: I believe it would apply to both.
 
 
 34
 THE COURT: No, I don't think so.
 
 
 35
 After review of Florida law, we conclude that the controlling question of whether knowing misuse of a product in a manner that was not only unintended but also unforeseeable bars a simple negligence claim is unanswered by controlling precedent of the Supreme Court of Florida.
 
 
 36
 It appears settled under Florida law that, as instructed by the district court, the jury's finding of an unforeseeable misuse barred recovery on Benitez's strict liability claim. The Florida Supreme Court recently stated in High v. Westinghouse Elec. Corp., 610 So.2d 1259, 1262 (Fla.1992), that "[i]n order for strict liability to apply to the manufacturer, the [product] in this instance must have been used for the purpose intended." The jury's finding that Benitez knowingly misused the baghouse in a manner for which it was not made and which was unforeseeable to Standard Havens foreclosed Benitez's strict liability claim. However, the effect of that jury finding on Benitez's negligence claim is less certain. In High, the supreme court went on to address the merits of the plaintiff's negligent failure to warn claim after concluding that the unintended use of the defendant's product barred recovery under strict liability: "We find that a manufacturer has a duty to warn of dangerous contents in its products which could damage or injure even when the product is not used for its intended purpose." Id. at 1262. This holding appears to indicate that there is no absolute bar to recovery in negligence for an unintended use that is foreseeable. Nonetheless, the High court did not discuss the effect of an unforeseeable, unintended use on a products liability action sounding in negligence. In fact, the High court's strict liability discussion did not address foreseeability either. See id. at 1263 (Barkett, J., concurring in part and dissenting in part) (noting that the majority did not clarify whether "intended uses" includes unintended uses that were reasonably foreseeable and arguing that the question whether dismantling of defendant's product was foreseeable was for jury).
 
 
 37
 Standard Havens argues that the jury's unforeseeable misuse finding precludes recovery for negligence as well as strict liability. Standard Havens has cited us to no case, and we are aware of none that clearly establishes the principle it argues. A recent decision of this Court, Mosher v. Speedstar Div. of AMCA Int'l, Inc., 979 F.2d 823, 825 (11th Cir.1992), appears at first blush to indicate to the contrary. That decision reversed the district court in part for instructing the jury that "an abnormal use by the plaintiff which was not reasonably foreseeable by the manufacturer will negate liability." We stated in Mosher that "Florida law does not suggest that misuse will 'negate liability' as the district court instructed. Instead, misuse is simply to be considered as part of the comparative fault calculus." Id. at 826. Upon closer examination, however, that decision is not dispositive because, as the opinion in it points out, there was no issue of unforeseeable misuse before the jury in Mosher. The record in that case showed that the misuse there had been foreseeable. Id. Thus, the broad statement in the Mosher opinion is non-binding dictum and cannot control a case such as the present one, in which the misuse was actually unforeseeable.
 
 
 38
 Standard Havens points to the decision in Clark v. Boeing, 395 So.2d 1226, 1229 (Fla.Dist.Ct.App.1981), where the court stated: "A knowing misuse of a manufacturer's product creates no liability on the part of the manufacturer." While appearing to support the broad proposition argued by Standard Havens, the Boeing court's statement is not dispositive of the issue facing us in this case either. That statement is found in the court's discussion of the plaintiff's strict liability claim; no mention was made of that absolute bar to recovery in the portion of the court's opinion addressing the plaintiff's negligence claim. Moreover, the court followed up that holding with the following: "Under that circumstance, the sole cause of the injury is the misuse of the product." Id. This last statement indicates that the court's holding was based on the particular facts of the case and the lack of causation between any alleged defect and the plaintiff's injuries, not on an absolute bar to recovery for knowing misuse. In the present case, by contrast, the jury found that negligence of Standard Havens was a legal cause of injury to Benitez.
 
 
 39
 Other cases cited by Standard Havens also involve proximate cause holdings. In Watson v. Lucerne Mach. and Equip., 347 So.2d 459, 461 (Fla.Dist.Ct.App.1977), the court found that the decedent's death was caused not by any defect, but solely by his disregarding warnings from his supervisors to stay away from a machine that presented obvious dangers during operation. The Lucerne court's conclusion that the plaintiff's own actions were the sole proximate cause of his death is not the equivalent of a finding that unforeseeable, knowing misuse is an absolute bar to recovery. See also Kroon v. Beech Aircraft, 628 F.2d 891 (5th Cir.1980) (applying Florida law and upholding summary judgment on grounds that plaintiff's negligence in failing to release aircraft "gust lock" device was "sole proximate cause" of damage to plane).[2]
 
 
 40
 We believe the issue of Florida law raised by the parties in this appeal is appropriate for resolution by the highest court of Florida. While that court has resolved similar issues involving questions of whether certain defenses operate as absolute bars or simply merge into the comparative negligence calculation under strict liability, e.g., Auburn Mach. Works Co., Inc. v. Jones, 366 So.2d 1167, 1170-72 (Fla.1979) (holding that obvious and patent danger rule merged into comparative negligence); Blackburn v. Dorta, 348 So.2d 287, 292-93 (Fla.1977) (holding that implied assumption of risk merged into comparative negligence), we are aware of no decision that has addressed this issue with respect to a knowing misuse, unforeseeable to the manufacturer, in the context of products liability action based on negligence. We, therefore, certify the following question:
 
 
 41
 DOES A PLAINTIFF'S KNOWING MISUSE OF A PRODUCT IN A MANNER NEITHER INTENDED NOR FORESEEABLE BY THE DEFENDANT MANUFACTURER BAR RECOVERY, AS A MATTER OF LAW, ON A PRODUCTS LIABILITY CLAIM SOUNDING IN NEGLIGENCE?
 
 
 42
 We do not intend the particular phrasing of this question to limit consideration of the problems posed by the entire case. The Court is at liberty to consider the problems and issues involved in this case as it perceives them to be. In order to assist the determination, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Florida.
 
 
 
 [1]
 In addition to the claims for negligence and strict liability, the original complaint set out claims for breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, and breach of express warranty. The warranty claims were dismissed by order of the district court prior to trial and are not at issue in this appeal
 
 
 [2]
 In moving for a directed verdict at trial and for judgment notwithstanding the verdict after trial, Standard Havens argued that Benitez's injuries were not proximately caused by any of the defects alleged by Benitez, but were proximately caused solely by Benitez's own knowing misuse of the baghouse by entering it with the auger running