Herman JOHNSON, Plaintiff,

v.

FT. PIERCE POLICE DEPARTMENT,
et al., Defendants.

No. 91–14264–CIV.

United States District Court,
S.D. Florida.

Feb. 25, 1994.

Herman Johnson, pro se.

John T. Brennan, Ft. Pierce, FL, for defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

RYSKAMP, District Judge.

THIS CAUSE came before the Court upon the Plaintiff's Complaint brought pursuant to 42 U.S.C. § 1983, alleging violations of civil rights, privileges and immunities secured by the United States Constitution.

THE MATTER was referred to the Honorable Ann E. Vitunac, United States Magistrate Judge. A Report and Recommendation dated February 1, 1994, has been filed, recommending that the Defendants' Motion for Summary Judgment be granted as to all claims and all Defendants, and that this case be dismissed. The Defendant has not filed objections to the Report and Recommendation. The Court has reviewed the entire file and record herein, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that United States Magistrate Judge Ann E. Vitunac's Report and Recommendation be, and the same is, hereby ADOPTED in its entirety.

DONE AND ORDERED.

### REPORT AND RECOMMENDATION

VITUNAC, United States Magistrate Judge.

THIS CAUSE is before the Court on Order of Reference from United States District Court Judge Jose Gonzalez, Jr. for a Report and Recommendation with respect to the Defendant's Motion for Summary Judgment (DE 78). The case has since that time been reassigned to United States District Court Judge Kenneth L. Ryskamp. This Court has reviewed the Defendant's Motion for Summary Judgment and the Plaintiff's Response and Memorandum (DE 72 and DE 73) and the additional authority and memo supplied by the Plaintiff (DE 89) and the Defendant's "Response to Plaintiff's Response to Motion for Summary Judgment."

Additionally, this Court heard oral argument on January 4, 1994. This matter is now ripe for review.

## THE COMPLAINT

The complaint is brought pursuant to 42 U.S.C. § 1983 alleging violations of civil rights, privileges and immunities secured by the United States Constitution. Herman Johnson sues the Ft. Pierce Police Department, Gil Kerlikowske, Chief of Police, Lieutenant Edward Reed, Sergeant Joe Wirthman, Detectives Timothy Gahn, Greg Kirk, James Aikens, Tom Smith, Rick Rust, Laura Cairns, Jay Brown, Tommy Thompson, Cheryl Robinson, and Ed Duffy. The Ft. Pierce Police Department and Ed Duffy have previously been dismissed by the District Court as defendants from this lawsuit.

The complaint alleges that on February 21, 1991, Judge Dan Vaughn (St. Lucie County Circuit Court Judge) issued a warrant to search the premises located at *510* North 10th Street in Ft. Pierce, Florida for heroin and cocaine. The complaint alleges that ten days thereafter, Defendants (all Ft. Pierce police officers), Gahn, Kirk, Aikens, Smith, Rust, Cairns, Brown, Thompson, Wirthman, Reed, and Duffy "instituted" that same search warrant to conduct an unauthorized search of the premises at *512* North 10th Street.

Johnson alleges that the above-named Defendants drove up to the premises located at 512 North 10th Street and jumped from a van with their guns drawn and began hollering and cursing, "Mother fuckers, get down, get down on the goddamn ground." Johnson alleges that the officers were in uniform.

According to the complaint, Officer Kirk ran up to the Plaintiff, who was sitting on a stool in the doorway of the rooming house at 512 North 10th Street, pointed a gun to the Plaintiff's head, and commanded him to "get on the goddamn floor." When the Plaintiff turned around to do so, Kirk struck Plaintiff in the back with a gun and pushed him forward, causing him to lose his balance. As Plaintiff was falling to the floor inside the hallway, his back struck hard against the door of Room 1, causing pain and injury to the Plaintiff's back.

Paragraph 4 of the complaint alleges that while Johnson was lying on the floor in pain, Aikens and Smith entered the hallway. According to the complaint, Aikens straddled Johnson and shoved his knee hard down into the lower part of Plaintiff's back, then caused severe pain and injury to the Plaintiff's back.

Paragraph 5 alleges that simultaneously, Officer Smith reached down and struck the Plaintiff on the left side of his neck, causing excruciating pain and injury. He was handcuffed. Johnson further alleges that a search of Room 1 of Raymond's Rooming House was done in his presence. Plaintiff alleges that drugs were seized from a jacket from that room. He further alleges that after he refused to tell who the room belonged to, Defendant Smith charged him with possession of cocaine with intent to sell.

Plaintiff alleges that he made numerous requests to Defendant Robinson (a transporting officer) to be taken to the hospital for treatment of his injuries, but that she did not do so. Robinson instead asked Defendant Rust if Plaintiff should be taken to the jail and Rust allegedly responded, "Fuck Raymond, take him down."

Plaintiff alleges that he was taken to the St. Lucie County Correctional Center, during which time someone came and looked at the Plaintiff's back, wrote his name down and left.

Plaintiff alleges in his complaint that he continues to experience pain in the lower part of his back and neck. He alleges that upon his release from the St. Lucie Correctional Center, he went to the emergency room at Lawnwood Medical Center, where he was treated and released. Exhibit H attached to the complaint reflects that the Plaintiff was at the emergency room for approximately one hour, was not x-rayed, and was given what appears to be muscle relaxants and sent home.

Plaintiff alleges that he continues to seek chiropractic care because of his injuries sustained from the assault by the police officers.

Plaintiff alleges that he made a complaint to the Police Department about his treatment during the execution of the search warrant, and that Officer Reilly investigated his complaints and determined that there was insufficient evidence to prove or disprove Johnson's allegations.

## PLAINTIFF'S CONTENTIONS

Plaintiff alleges a deprivation of his rights guaranteed by the "Fourth, Fifth and Fourteenth Amendments to the United States Constitution to be free from unlawful arrest, detention, search and seizure." Plaintiff sues Gahn, Kirk, Aikens, Smith, Reed, Wirthman, Rust, Cairns, Brown, Thompson, Robinson and Duffy, for their participation in the "unauthorized search and seizure at the premises located at 512 North 10th Street, in violation of his Fourth Amendment right to be secure in his house, papers and effects against unreasonable searches and seizures."

Plaintiff sues Gahn, Kirk, Aikens, Smith, Reed, Wirthman, Rust, Robinson and Duffy for "that they knew or should have known that their unprovoked practice of violently cursing while pointing guns at unarmed individuals, assaulting individuals without probable cause, and slamming any individual they catch in the area on the ground for no reason, other than to inflict pain and fear before instituting a search of the premises, would violate constitutional rights of individuals affected and they knew or should have known that such practice is not written anywhere in the Ft. Pierce Police Department's policies, procedures, rules or regulations and is not state law."

Johnson alleges that Kirk, Aikens, and Smith willfully and maliciously assaulted him without probable cause, in violation of his rights guaranteed by the Eighth and Fourteenth Amendments of the Constitution.

Plaintiff further alleges that Rust and Robinson intentionally and deliberately refused to take him to the hospital for medical assistance before taking him to jail, which violated his right under the Eighth Amendment to be free from cruel and unusual punishment.

He alleges that Aikens' and Smith's search of his person was without probable cause and that his money was illegally seized in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

Johnson sues Michelle Reilly alleging violations of due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution for failing to conduct an honest investigation of his brutality complaints.

Plaintiff petitions the Court for a declaratory judgment declaring the practices, policies, rules and regulations, and procedures of the Defendant state a cause of action against the Defendant; prays for issuance of an order enjoining the Defendants from harassing or threatening the Plaintiff because of the institution of this action; prays for compensatory damages in the amount of $10 from each Defendant in the action; prays for issuance of an order that Defendants, Kerlikowske, Smith, Aikens, Kirk, Rust and Robinson each pay the Plaintiff punitive damages in the amount of $1,000,000; and lastly, Johnson prays the issuance of an injunction against the Special Operations Division of the Ft. Pierce Police Department from inflicting violent assaults and bodily harm on individuals and from frightening individuals with their vicious actions and tactics without probable cause whenever they are conducting searches or investigations in the northwest section of the city of Ft. Pierce.

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT LIEUTENANT REILLY'S INVESTIGATION

■ Defendant, Lieutenant Michelle Reilly, moves for summary judgment alleging she did nothing but conduct an internal investigation based upon the complaint filed by Herman Johnson with the Police Department. She concluded that there was insufficient evidence of excessive force, but did find that Officer Aikens had used foul or improper language. (Depo. of Michelle Reilly) (DE 66). Plaintiff's Answer to Defendant's Motion for Summary Judgment (DE 72) alleges as a deprivation of his Constitutional Rights the fact that Reilly never interviewed two of the officers allegedly involved in the incident. "Plaintiff stated then and still says Lieutenant Reilly's investigation was a sham proceeding and was not conducted in good faith, and summary judgment should not be granted." Plaintiff offers no evidence of any kind whatsoever in any form that Lieutenant Reilly's investigation was a "sham proceeding" or in any fashion violated any rights he had to due process. He has alleged absolutely no facts, much less come forth with evidence to show that his right to equal protection was

somehow denied based on the manner of Lieutenant Reilly's investigation.

A plaintiff opposing summary judgment has the burden of showing that a genuine dispute of material facts exist. Conclusory allegations or evidence setting forth legal conclusions are insufficient to meet the Plaintiff's burden. *Bennett v. Parker*, 898 F.2d 1530, 1534 (11th Cir.1990). Reilly's Motion for Summary Judgment must be granted.

### CHIEF GIL KERLIKOWSKE

The Plaintiff, Herman Johnson, sues Chief Gil Kerlikowske. Kerlikowske was the Chief of Police of the Ft. Pierce Police Department at the time of the alleged incident. Johnson alleges that, "At all times mentioned herein, Defendant Kerlikowske was responsible for the acts of his duly appointed law enforcement officers while in their performance as such for said police department." Johnson alleges that Kerlikowske is liable to him, "in that he is primarily responsible in his official capacity for the acts and practices of the Defendants described herein, which include the acts of the Special Operations Division, the acts and practices of the Professional Standards Division, and the Administrative Staff of the Ft. Pierce Police Department." Thus, Kerlikowske is being sued in his official capacity and not individually. Kerlikowske was not present for the execution and search warrant. There is no evidence that Kerlikowske played any part in the investigation or acquisition of the warrant.

█ In order for Chief Kerlikowske to be liable to the Plaintiff, when sued in his official capacity, the Plaintiff must show that the Chief of Police established and/or maintained a pattern, practice or policy, the enforcement of which deprived the Plaintiff of a specified constitutional right.

█ For all purposes other than name, however, a suit against individuals in their official capacities is a suit against the governmental entities they represent. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).

█ Plaintiff has failed to identify any policy or practice of Chief Kerlikowske, the enforcement of which deprived him of a specific constitutional right. Without that specification and proof or some evidence of a deprivation, the Plaintiff does not meet his burden under Rule 56 of the Federal Rules of Civil Procedure.

### THE SEARCH WARRANT

█ Herman Johnson alleges a violation of his constitutional right to be free from unlawful searches and seizures, in that he alleges that the search warrant issued by Judge Vaughn for the rooming house of which he is the manager bears the wrong address. Johnson alleges that on February 21, 1991, Judge Dan Vaughn, St. Lucie County Circuit Court, issued a search warrant for the premises and curtilage of 510 North 10th Street. Johnson alleges that the location actually searched by the officers, Gahn, Kirk, Aikens, Smith, Rust, Cairns, Brown, Thompson, Wirthman, Reed, and Duffy, was *512* North 10th Street in Ft. Pierce.

The Plaintiff offers no support, other than his own testimony that the address of the premises searched is actually 512 North 10th Street and not 510 North 10th Street. Assuming for sake of argument that Plaintiff's facts are true, the Plaintiff has neither alleged nor shown a constitutional deprivation based on that fact. All the testimony of record reflects that the rooming house and specific rooms searched by the Defendants were in fact the rooms they intended to search. If in fact the rooming house should have been described as 512 and not 510, the error is not of constitutional proportion. The affidavit underlying the search warrant describes "Raymond's Rooming House" in detail. It is a place well known by law enforcement and several search warrants have been served there in the past.

... [T]he question for purposes of the individual defendants' qualified immunity defense is not whether probable cause actually existed. Instead, "[w]hen a law enforcement officer seeks summary judgment on the basis of qualified immunity, we only must ask whether, viewing the facts in a light favorable to the non-movant, there was *arguable* probable cause." *Moore v. Gwinnett*, 967 F.2d 1495 (11th Cir.1992).

*Swint v. City of Wadley, Ala.*, 5 F.3d 1435 (11th Cir.1993).

In the case at bar, the police officers were executing a search warrant duly authorized by a court of competent jurisdiction. The officers believed that the residence they were searching was numbered 510.

... [I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and ... that in such cases those officials ... should not be held personally liable. *Anderson v. Creighton*, 483 U.S. 635 at 641, 107 S.Ct. 3034 at 3039–40, 97 L.Ed.2d 523 (1987).

This Court concludes that the officers executing the search warrant had probable cause to believe that they were executing the search warrant at the proper residence and, therefore, any argument that Herman Johnson was deprived of his constitutional rights by such act is without merit. The Defendants serving the search warrant are entitled to summary judgment on the issue of probable cause.

### EXCESSIVE USE OF FORCE DURING EXECUTION OF THE WARRANT

■ The facts as to what occurred during the execution of the warrant are hotly disputed. However, factual disputes do not preclude a grant of summary judgment premised on a defendant's qualified immunity if the legal norms allegedly violated were not clearly established at the time of the alleged actions. Thus, in the context of a § 1983 case, summary judgment would be appropriate as a matter of law, notwithstanding factual disputes on the record regarding the defendant's conduct. *Swint v. City of Wadley, Ala.*, 5 F.3d 1435 at 1442 (11th Cir.1993).

### PLAINTIFF'S ALLEGATIONS TAKEN AS TRUE

■ For purposes of the Defendants' Motion for Summary Judgment, this Court will take as true the allegations of the Plaintiff. With respect to the issue of excessive use of force by police officers during the execution of the warrant, the Plaintiff alleges as follows [1]:

1. Plaintiff's contentions are taken from his sworn deposition filed as a part of this record and from

Plaintiff alleges that he is an apartment manager by occupation and that on March 1, 1991, he was working as an apartment manager for his sister. At the time of the search warrant, he managed a rooming house with seven rooms in it. The Plaintiff admits that the rooming house is called Raymond's Rooming House, which is also a nickname by which the Plaintiff is known.

Plaintiff alleges that on March 1, 1991, he was sitting in the doorway of the rooming house and two people were sitting out in the yard when they heard a helicopter come over the house. Depo. at p. 11. According to Johnson, one of those persons stated, "They're going to raid somewhere." Johnson said he looked up and saw the helicopter and he said, "When you see it like that, they're going to raid somewhere." The helicopter made another circle around the rooming house and came directly in front of the rooming house, at which time Johnson said, "Yeah, they're gonna raid somewhere," and then a girl named Renee looked north and said, "Here come Task now." According to Johnson, they all looked in the direction Renee pointed out and "they were coming at a high rate of speed." Johnson stated that nobody tried to run. "They come up and jumped out with their guns and told us to get on the goddamn ground. One of them hit me; I don't know which one. Detective Kirk ran up to me and put his gun to my head and told me to get on the damn ground."

According to Johnson, Kirk stuck the gun at his forehead and told him to get on the ground. As he was turning to stoop to comply, Kirk hit him on the back with his gun and pushed him and at the same time, he fell up against the door frame.

When asked if Johnson saw Kirk hit him with the gun, Johnson responded, "How could I see him when my back was turned?"

Question: That's what I'm asking?

Answer: I couldn't.

Question: So you did not see him?

Answer: No.

the complaint itself.

Question: You got pushed to the ground?

Answer: He hit me and pushed me just about simultaneously.

Question: How do you know he hit you if you didn't see him?

Answer: What do you mean how do I know? I can feel; okay?

At this time, according to Johnson, he fell up in the door. "Part of my body was in the door and I was squatting to take the position and Smith and Atkins came in and he told Kirk to go on down, he had Raymond. And he told me to stretch out. I said, man, you don't have to do this, this is not necessary." It is at this time that Johnson states Detective Atkins kneed him in the small part of his back and Smith slapped him and put his knee on the left side of his neck and handcuffed him. Smith then patted down Johnson and took his wallet out of his pocket and laid it on the dresser.

Johnson claims his back was hurt by the fall and that he requested to be taken to the emergency room. That request was denied. He was transported to jail, where he stayed for approximately four hours, after which time he took himself to the emergency room. While at the jail, he complained of his injuries and they were observed by someone at the jail, but he received no treatment and was not taken to the hospital.

■ The Defendants argue that no excessive force was used and that each of them is entitled to summary judgment based on qualified immunity with respect to that issue. When a plaintiff is actually "seized" within the context of the Fourth Amendment, his claim of excessive force must be reviewed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The subjective intent of the officers is irrelevant in this equation. *See Courson v. McMillian,* 939 F.2d 1479 (11th Cir.1991). "The test is whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred. (citation omitted) Thus, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1487, quoting *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

According to the deposition testimony of Officer Gregory Kirk, he was very familiar with Raymond's Rooming House. Officer Kirk had been there numerous times to confiscate drugs and had been there on other "raids" and arrests. Officer Kirk knows Herman (Raymond) Johnson by name and Johnson knows him. According to Kirk's sworn deposition, which is a part of the record to be considered by the Court in support of the Motion for Summary Judgment, Kirk got out of the police van and began hollering, "Police, search warrant, down. Police, search warrant, down." He had his weapon out and was telling people to get on the ground. Kirk testified that the reason he had his weapon out was in case "they decided to pull out a weapon on him."

According to Kirk, as he ran approaching Raymond's Rooming House, Herman (Raymond) Johnson and another man stood in the hallway right at the front door and refused to get on the ground after he hollered several times for them to get on the ground. Kirk states that he "stiff-armed" them and both of them fell back in a domino effect. He kept running back to the third door on the right in the rooming house, which was his assigned room in the rooming house, to secure it. Smith and Aikens handcuffed Herman·Johnson on the ground after Kirk ran on to Room 3. Cocaine and heroin were found in that room.

Kirk testified on deposition that he has been to numerous law enforcement schools and has been instructed in the proper methods for executing search warrants. Each of those schools taught Kirk that the primary objective in any search is safety. The officers are taught to holler, "Police, search warrant, down on the ground. Police, search warrant, down on the ground." "We're trained if they do not go down on the ground, then it's our job to put them on the ground. The way that we are able to do that is basically like a football stiff-arm, draw your weapon in. Now you do have your weapon out, and you put your weak hand out and you put your strong hand in close to your body so that nobody can grab a hold of your firearm

at that time, pushing the subject on the ground who is resisting your entry." Kirk testified that this action is necessary for not only the protection of the police officers, but for all citizens if someone begins shooting.

Prior to the execution of the search warrant, the executing officers were made aware of the fact that Herman (Raymond) Johnson personally had sold drugs to a confidential informant out of three separate rooms from Raymond's Rooming House on three occasions. These acts constituted the basis of the affidavit underlying the search warrant which was being executed. Additionally, officers were armed with information that on a previous search warrant execution, Herman Johnson had attempted to flush drugs down the toilet and had been convicted of obstructing justice by tampering with evidence as a result of those actions.

Smith, Aikens and Kirk are entitled to summary judgment on the issue of qualified immunity, unless Johnson can show that those officers violated clearly established law when they pushed him to the ground and handcuffed him in the manner as described by Johnson in his complaint and deposition.

This Court has already found that there was probable cause for the officers to believe that they were executing a valid search warrant. This Court also finds that there was probable cause to arrest Herman Johnson at the time of the execution of the search warrant.[2] The same facts upon which the Circuit Court Judge based his finding of probable cause to search Raymond's Rooming House are facts which give rise for probable cause to believe that Herman (Raymond) Johnson had sold narcotics. This probable cause finding is a sufficient basis of probable cause to arrest Herman Johnson, as well as a sufficient basis to search the residence. In order for Herman Johnson to prevail against the officers in a § 1983 context for "taking him to the ground" and arresting him, he must show that the officers' conduct in so doing violated clearly established law at the time.

[All] claims that law enforcement officers have used excessive force—deadly or not— in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

*Swint v. City of Wadley, Ala.,* 5 F.3d at 1447–48, citing *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

This Court gave Plaintiff an additional ten (10) days to cite to this Court any precedent showing that the force used by the officers in the instant case was force that any reasonable police officer would know violated clearly established law. The Plaintiff cites two cases, *Dandridge v. Richmond,* 566 F.Supp. 152 (E.D.Va.1983), and *Sellers v. Roper,* 554 F.Supp. 202 (E.D.Va.1982), in support of his contention that the officers used excessive force. However, in each of those cases, summary judgment was granted for the law enforcement officers finding that there was no excessive force used in those cases.

In evaluating a claim of excessive use of force in arrest, the Court must examine the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted. *Leslie v. Ingram,* 786 F.2d 1533 (11th Cir.1986).

As stated previously, good faith of the officer is irrelevant in the equation.

The testimony before the Court from both the law enforcement officers and the Plaintiff is that law enforcement officers began the execution of the warrant by running across the yard in front of Raymond's Rooming House yelling, "Search warrant, get on the ground. Search warrant, get on the ground." All officers were wearing uniforms or jackets clearly indicating they were law enforcement officers. Herman Johnson recognized the police officers as police officers. By his own testimony, he did not get on the ground fast enough to satisfy Officer Kirk.

---

**2.** Defendants in their memoranda state that Herman Johnson was being placed on the ground for his safety. It is unclear at what time Defendants allege that Herman Johnson was actually placed under arrest. This Court finds that the actions in taking Herman Johnson to the ground and handcuffing him are tantamount to arrest or at least a Fourth Amendment seizure in the context of this case.

Kirk testified that it is his training to put a person on the ground if that person does not respond to his oral command to do so. Herman Johnson was pushed to the ground and struck in the back to facilitate that end. His injuries by his own evidence did not require x-rays and did not result in any cuts or broken bones. The Plaintiff suffered sore muscles and strain as a result of the incident. He was in the emergency room for approximately one hour and then released with some type muscle relaxant or pain killer. His further treatment has been at a chiropractor.

Unlike the facts in *Ortega v. Schramm*, 922 F.2d 684 (11th Cir.1991), the police officers in the instant case identified themselves as law enforcement officers, announced their authority and purpose and lawfully ordered the Plaintiff to the ground. When he did not comply with that order, he was taken to the ground. It cannot be said that the amount of force used by the law enforcement officers was objectively unreasonable. Once taken to the ground and handcuffed, the Plaintiff was immediately brought to his feet and taken into the room in the rooming house from which law enforcement officers testified they had seen him leave. He was able to observe the search of that room and to observe the discovery of cocaine in a jacket pocket. During the time he was taken to the ground, sworn depositions reflect that other residents of the rooming house were throwing narcotics and money out the window of the rooming house and one resident himself either ran out the back door of the rooming house or out the window and disappeared. Because law enforcement officers had served numerous search warrants at Raymond's Rooming House and because the rooming house was a known narcotics dealing location, the officers had good cause to fear for their own safety and the safety of others during the execution of the warrant. The officers' actions on that day were dictated by the situation in which they found themselves. As stated in *Graham v. Connor*, 490 U.S. at 396–97, 109 S.Ct. at 1872, 104 L.Ed.2d 443 (1989):

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight (citation omitted). The Fourth Amendment is not violated by an arrest based on probable

cause, even though the wrong person is arrested, (citation omitted), nor by the mistaken execution of a valid search warrant on the wrong premises. *Maryland v. Garrison*, 480 U.S. 79 [107 S.Ct. 1013, 94 L.Ed.2d 72] (1987). With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," *Johnson v. Glick*, 481 F.2d 1028 at 1033 [ (2nd Cir.1973) ] violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

■ Because this standard establishes no bright line, qualified immunity applies unless application of the standard would inevitably lead every reasonable police officer in this position to conclude the force was unlawful. *See Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir.1993). As in *Post*, that the amount of force used by Kirk, Smith and Aikens, even if unnecessary, was enough to violate the law was not plain; doubt exists as to whether this amount of unnecessary force was unlawful. *Id.* at 1560.

This Court finds that the amount of force used by the law enforcement officers in the instant case did not violate clearly established law within the context of the Fourth Amendment. The officers are entitled to summary judgment.

*MEDICAL NEEDS OF THE PLAINTIFF*

■ Lastly, the Plaintiff, Herman Johnson, alleges that the intentional and deliberate refusal to take the Plaintiff to the hospital for medical assistance before transporting him to the jail violated his right under the Eighth Amendment of the United States Constitution to be free from cruel and unusual punishment and to be provided needed medical treatment or care. Whether the Plaintiff's allegations are judged in view of the Eighth Amendment standards (as he alleges) or by the Fourteenth Amendment or

the Fourth Amendment, the Plaintiff's claim must fail. The Plaintiff's evidence simply does not show deliberate indifference to serious medical need. There is no showing that the officers' actions amounted to punishment.

The evidence before the Court does not show that an objectively reasonable police officer would have acted differently under the same circumstances. After the Plaintiff was placed in handcuffs, he was stood up and according to his deposition, he stated, "You didn't have to do that to me." Officer Kirk allegedly responded, "If you'd gotten on the ground like I told you to, I wouldn't have had to knock you down." The Plaintiff was walked through various rooms of the rooming house during the execution of the search warrant and then sat out front of the rooming house on a timber, waiting to be transported to the police department. Other than the Plaintiff's statement that he wished to go to the hospital, there was no objective evidence that the Plaintiff had been injured.

Law enforcement officers dispute the fact that Johnson ever asked to go to the hospital. There is no evidence of record that the failure of law enforcement officers to transport Herman Johnson to the hospital aggravated any injuries that he may have sustained. Indeed, the evidence shows that Herman Johnson took himself to the emergency room of the hospital within four hours of his arrest and was treated and released within an hour. No x-rays were taken of the Plaintiff, and no follow-up was ordered by the emergency room. The Plaintiff took himself to a chiropractor, of whom he was already a patient. Thus, considered either under the objective reasonableness test of the Fourth Amendment or by the less protective Eighth Amendment standard of deliberate indifference to serious medical need, summary judgment again must be granted in favor of the Defendants.

For the reasons stated above, this Court RECOMMENDS that summary judgment be GRANTED with respect to all claims and all Defendants and that this case be DISMISSED.

The parties have ten (10) days from the date of this Report and Recommendation to contest the factual findings of the Court, if any, in writing to the Honorable Kenneth L. Ryskamp, United States District Court Judge.

DONE and SUBMITTED this 1st day of February, 1994, at West Palm Beach in the Northern Division of the Southern District of Florida.