648 So.2d 1192 (1994)
STANDARD HAVENS PRODUCTS, Inc., Appellant,
v.
Fernando BENITEZ, et ux., Appellees.
No. 82795.
Supreme Court of Florida.
December 1, 1994.
Rehearing Denied January 30, 1995.
*1193 Kathleen M. O'Connor, Thornton, David, Murray, Davis, Thornton & Sreenan, P.A., Miami, for appellant.
G. William Bissett, Hardy, Bissett & Lipton, P.A., Miami, Donald T. Norton, Cohen & Cohen, P.A., Hollywood, for appellees.
ANSTEAD, Justice.
We have before us Benitez v. Standard Havens Products, Inc., 7 F.3d 1561 (11th Cir.1993), in which the Eleventh Circuit Court of Appeals certified the following question:
DOES A PLAINTIFF'S KNOWING MISUSE OF A PRODUCT IN A MANNER NEITHER INTENDED NOR FORESEEABLE BY THE DEFENDANT MANUFACTURER BAR RECOVERY, AS A MATTER OF LAW, ON A PRODUCTS LIABILITY CLAIM SOUNDING IN NEGLIGENCE?
Id. at 1565. We have jurisdiction pursuant to article V, section 3(b)(6) of the Florida Constitution. While we have some difficulty with the wording of the question and whether it frames a proper interrogatory to a jury on the issue of product misuse in a negligence case, we answer the question in the negative.[1]

CIRCUMSTANCES OF THIS CASE
We quote from the Eleventh Circuit opinion for the relevant facts and circumstances:
Fernando Benitez, an employee of Community Asphalt Corporation, was injured at work on June 5, 1987, when his leg was caught and partially amputated by an auger mechanism situated at the bottom of a pollution control apparatus known as a "baghouse." The baghouse was designed and manufactured by Standard Havens Products, Inc. It operates like a giant vacuum cleaner, collecting in fourteen-foot long fabric bags the dust produced during the manufacture of asphalt. The bags are "pulsed" to remove the accumulated dust which falls into a v-shaped hopper. At the bottom of the hopper is a thirty-foot long auger, much like a horizontal screw, which removes the collected debris. Benitez was injured after he entered the baghouse, with the auger mechanism running, to clean the dust from the inside walls of the baghouse. As Benitez was raking debris from the walls, he stepped off of the screen panels covering the opening to the auger, causing his foot to be pulled into the spinning auger.
Benitez and his wife brought this products liability action against Standard Havens, and Standard Havens brought in Benitez's employer, Community Asphalt, as a third-party defendant. Community Asphalt has been dismissed from this appeal on joint motions by Standard Havens and Community Asphalt. Benitez argued at trial that Standard Havens was negligent in designing the baghouse without proper safety measures to prevent an accident such as his, including an adequate protective screen over the auger mechanism and proper warnings of the dangers presented by the mechanism. Benitez also claimed that the defects to the baghouse *1194 rendered it unreasonably dangerous and, therefore, Standard Havens was strictly liable for his injuries caused by those defects.1 Standard Havens defended that Benitez's own negligence was the cause of the injuries and that Benitez had knowingly misused the baghouse and assumed any risk of injury. Standard Havens presented evidence that Benitez's employer had in place a policy, of which Benitez was fully aware, that instructed employees to "lockout" motorized equipment like the baghouse auger mechanism before doing work on or near such equipment. This policy was consistent with the procedures outlined in the baghouse operations and maintenance manual provided by Standard Havens. Benitez acted in contravention of the lockout policy, intentionally turning on the auger before entering the baghouse.
1[2] In addition to the claims for negligence and strict liability, the original complaint set out claims for breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, and breach of express warranty. The warranty claims were dismissed by order of the district court prior to trial and are not at issue in this appeal.
At the close of all of the evidence, the district court instructed the jury on the law of products liability premised on negligent design or manufacture as well as strict liability, and further instructed the jury relating to Standard Haven's defenses of comparative negligence, product misuse, and assumption of risk.
Following its instruction on Benitez's negligent design and manufacture theory, the court instructed the jury on Standard Havens's comparative negligence defense:
The Defendant contends that the Plaintiff was himself negligent and that such negligence was a legal cause of his own injury. This is a defensive claim and the burden of proving that claim, by a preponderance of the evidence, is upon the Defendant who must establish:

First: That the Plaintiff was also "negligent;" and

Second: That such negligence was a "legal cause" of the Plaintiff's own damage.
If you find in favor of the Defendant on this defense, that will not prevent recovery by the Plaintiffs, it only reduces the amount of Plaintiffs' recovery.
The court then instructed on Benitez's strict liability claim. Included in that instruction was the following: "A product is unreasonably dangerous because of its design if the product fails to perform as safely as an ordinary person would expect when used as intended or in a manner reasonably foreseeable by the manufacturer or the risk of danger in the design outweighs the benefits." The court then instructed on Standard Havens's defenses to Benitez's strict liability claim:
The Defendant contends that FERNANDO BENITEZ's injury occurred as the result of his knowing "misuse" of the Alpha/Mark III Baghouse. A manufacturer is entitled to expect a normal use of his product. If the Plaintiff's injury occurred because he knowingly used the product in a manner for which the product was not made or adapted, and not reasonably foreseeable to the Defendant, then the Plaintiff cannot recover. It is for you to decide whether the Plaintiff was knowingly using the product at the time of the accident in a manner for which the product was not made or adapted, and whether this use was reasonably foreseeable to the Defendant.
If you find that the Defendant has established this defense by a preponderance of the evidence, then your verdict will be for the Defendant on the defective design and manufacture claim.
The Defendant also contends as another defense, that the Plaintiff was negligent and that such negligence was a contributing legal cause of his own injury. Specifically, Defendant alleges that:
(1) the Plaintiff intentionally operated the Alpha/Mark III Baghouse contrary to its operation and its maintenance manual, and
(2) that FERNANDO BENITEZ assumed the risk of injury because there was a dangerous situation or condition which was open and obvious, the Plaintiff knew of this dangerous situation, the *1195 Plaintiff voluntarily exposed himself to this danger and was injured thereby.
Following another recitation of standard negligence law, the court again instructed the jury on the principles of comparative negligence as a defense: "If you find in favor of the Defendant on the defense of comparative negligence, that will not prevent recovery by the Plaintiff, it will only reduce the amount of Plaintiff's recovery."
The case was then sent to the jury with a verdict form containing special interrogatories, which the jury answered as follows:
1. Was there negligence on the part of the Defendant, STANDARD HAVENS PRODUCTS, INC., in designing, manufacturing and assembling the Alpha/Mark III Baghouse which was a legal cause of injury or damage to the Plaintiffs?
Yes X No
2. Was the Alpha/Mark III Baghouse, designed, manufactured and sold by the Defendant, defective when it left the possession of the Defendant and such defect a legal cause of injury or damage sustained by the Plaintiffs[?]
Yes X No
If both of your answers to questions 1 and 2 are "no," your verdict is for the Defendant, and you should not proceed further except to date and sign this verdict form and return it to the courtroom. If your answer to question 2 is "yes," please answer question 3.
3. Did FERNANDO BENITEZ knowingly misuse the Alpha/Mark III Baghouse in a manner for which the product was not made and not foreseeable to the Defendant which was a legal cause of his injury?
Yes X No
If either of your answers to question 1 or 2 was "yes," please answer question 4.
4. Was there any negligence on the part of FERNANDO BENITEZ, which was a legal cause of the Plaintiffs' damage or injuries[?]
Yes X No
The jury determined that Fernando Benitez's total damages were $1,500,000.00 and that Alina Benitez's total damages were $250,000.00. Because the jury apportioned 70% fault to Standard Havens and 30% to Benitez, the court entered judgment on the jury's verdict, awarding $1,050,000.00 to Fernando and $175,000.00 to Alina.
On appeal, the dispute centers on whether the jury's finding that Benitez knowingly misused the baghouse in a manner unforeseeable to Standard Havens barred recovery on the claim of negligent design or manufacture. The court's charge to the jury instructed on misuse as a defense only to Benitez's strict liability claim, and the verdict form given to the jury was consistent with those instructions. In addition, a brief colloquy between counsel for Standard Havens and the court, during a conference immediately preceding the parties' closing arguments, confirms the court's assumption that knowing misuse would act to bar only the strict liability claim:
[DEFENSE COUNSEL]: If you look at question number 3, on misuse, it doesn't tell the jury what to do if they answer it no, or yes.
THE COURT: Well, I don't think we need to tell them that.
[DEFENSE COUNSEL]: If they answer it no, it is a verdict for the [plaintiff]. If they answer, yes, there was misuse, it was a verdict for the [defendant].
[PLAINTIFFS' COUNSEL]: Not on negligence.
THE COURT: It is a verdict for the defendant on the claim of strict liability.
[DEFENSE COUNSEL]: I believe it would apply to both.
THE COURT: No, I don't think so.
After review of Florida law, the Eleventh Circuit concluded that the controlling question of whether misuse of a product bars a simple negligence claim was unanswered by controlling precedent of the Supreme Court of Florida. Hence, it certified the question to us.

COMPARATIVE NEGLIGENCE
As the certified question makes clear, the action under consideration is a products liability *1196 claim sounding in negligence. Since our decision in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), where we replaced the rule of contributory negligence with that of comparative negligence, we have consistently rejected the use of various legal "doctrines" as per se absolute defenses to negligence claims. See, e.g., Auburn Mach. Works Co. v. Jones, 366 So.2d 1167 (Fla. 1979) ("patent danger" or "open and obvious hazard" rejected as exception to manufacturer's liability); Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977) (implied assumption of risk rejected as complete bar to recovery); Hoffman, 280 So.2d at 438 (doctrine of last clear chance no longer applicable in negligence cases). In Hoffman, we stated the impetus for our decision:
[T]oday it is almost universally regarded as unjust and inequitable to vest an entire accidental loss on one of the parties whose negligent conduct combined with the negligence of the other party to produce the loss. If fault is to remain the test of liability, then the doctrine of comparative negligence which involves apportionment of the loss among those whose fault contributed to the occurrence is more consistent with liability based on a fault premise.
Id. at 436. We also noted that the initial justification for establishing a complete bar to negligence claims was no longer valid:
It is generally accepted that, historically, contributory negligence was adopted `to protect the essential growth of industries, particularly transportation.' Modern economic and social customs, however, favor the individual, not industry.
Id. at 437 (citation omitted).
Subsequently, in Blackburn v. Dorta, 348 So.2d 287, 293 (Fla. 1977), we held that the affirmative defense of implied assumption of risk merges into the defense of contributory negligence and the principles of comparative negligence apply in all cases where the defense is asserted. We found no discernible basis analytically or historically to maintain a distinction between contributory negligence and assumption of risk and felt that Hoffman v. Jones dictated such a result. Id. at 292. Quoting from Hoffman, we restated the policy rationale for adopting comparative negligence:
A primary function of a court is to see that legal conflicts are equitably resolved. In the field of tort law, the most equitable result that can ever be reached by a court is the equation of liability with fault. Comparative negligence does this more completely than contributory negligence, and we would be shirking our duty if we did not adopt a better doctrine.
348 So.2d at 293.
Two years later, in Auburn Machine Works Co. v. Jones, we rejected the "patent danger" or "open and obvious hazard" doctrine as an absolute defense to negligence claims:
[T]he obviousness of the hazard is not an exception to liability on the part of the manufacturer but rather is a defense by which the manufacturer may show that the plaintiff did not exercise a reasonable degree of care as required by the circumstances. We also conclude that the principles of comparative negligence apply where this defense is raised.
... .
The patent danger doctrine protects manufacturers who sell negligently designed machines which pose formidable dangers to their users. It puts the entire accidental loss on the injured plaintiff, notwithstanding the fact that the manufacturer was partly at fault. This is inconsistent with the general philosophy espoused by this Court in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973); West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976); and Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977).
366 So.2d at 1167, 1171.

PRODUCT MISUSE
Negligent conduct in the form of product misuse has also been recognized as a discrete defense in the context of a strict liability claim. See Restatement (Second) of Torts § 402A, cmt. h (1965).[2] In 1976, this Court *1197 adopted the principles of strict liability in tort under section 402A of the Restatement (Second) of Torts and held that product misuse was simply a type of negligence that may be asserted as a defense. See West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976), answer to certified question conformed to, 547 F.2d 885 (5th Cir.1977); cf. Creviston v. General Motors Corp., 225 So.2d 331, 334 (Fla. 1969) (recognizing product misuse as defense in products liability claim based on breach of warranty).
In West, we delineated the type of conduct by a claimant that could be asserted as a defense in a strict liability action:
We recognize that contributory negligence of the user or consumer or bystander in the sense of a failure to discover a defect, or to guard against the possibility of its existence, is not a defense. Contributory negligence of the consumer or user by unreasonable use of a product after discovery of the defect and the danger is a valid defense. Prior to the adoption of the comparative negligence doctrine, a plaintiff's conduct as the sole proximate cause of his injuries would constitute a total defense. The defendant manufacturer may assert that the plaintiff was negligent in some specified manner other than failing to discover or guard against a defect, such as assuming the risk, or misusing the product, and that such negligence was a substantial proximate cause of the plaintiff's injuries or damages. The fact that plaintiff acts or fails to act as a reasonable prudent person, and such conduct proximately contributes to his injury, constitutes a valid defense... .
We now have comparative negligence, so the defense of contributory negligence is available in determining the apportionment of the negligence by the manufacturer of the alleged defective product and the negligent use made thereof by the consumer. The ordinary rules of causation and the defenses applicable to negligence are available under our adoption of the Restatement rule. If this were not so, this Court would, in effect, abolish the adoption of comparative negligence.
Id. at 90 (citations omitted; emphasis added). Although stated in the context of strict liability law, these observations make it clear that we have treated product misuse as a form of comparative negligence.

CONCLUSION
Consistent with the comparative negligence principles espoused in Hoffman, and our holdings in Blackburn, Auburn Machine Works, and West, we conclude that product misuse is not an absolute bar to a products liability claim sounding in negligence. Rather, much like the earlier demise of the absolute defense of contributory negligence, product misuse merges into the defense of comparative negligence. Consequently, product misuse reduces a plaintiff's recovery in proportion to his or her own comparative fault.
Of course, if a court determines as a matter of law, or a jury determines as a matter of fact, that a defendant was not negligent or that its negligence was not a cause of the claimant's injury, or if it is determined that a claimant's negligence was the sole legal cause of her injury, then, in such event, the claimant could not recover.[3] However, in this case, the jury found that the negligent conduct of both Standard Havens and Benitez were contributing legal causes of the Plaintiffs' injuries. As a result, the jury apportioned *1198 70% fault to Standard Havens and 30% to Benitez. Under the law of comparative negligence, this finding results in a reduction, but not a total bar, to Plaintiffs' claim.
Having answered the question certified in the negative, we return the case to the Eleventh Circuit Court of Appeals.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
NOTES
[1] As is discussed in the opinion, we have consistently rejected the use of various doctrines as absolute defenses in negligence cases. Rather, we have adopted the rule of comparative negligence under which the conduct of the injured party may be raised as a defense. Hence, in a negligence action, an interrogatory on comparative negligence may be appropriate, but not an interrogatory specifically focusing on product misuse, assumption of risk, or any other of the various characterizations of a claimant's alleged misconduct. In addition, in a negligence action it would be inappropriate to fashion an interrogatory that combines elements of the negligence claim with elements of a defense.
[2] Of course, negligence, as a basis of recovery in a products liability action, existed long before strict liability was recognized as a separate legal basis of recovery. See, e.g., Matthews v. Lawnlite Co., 88 So.2d 299 (Fla. 1956). And, as noted above, this Court has consistently rejected the notion of per se absolute defenses in negligence cases.
[3] While we are not reviewing the issue, we note that the trial court denied the defense's motion for directed verdict. In fact, the trial court observed:

It could be argued with a good deal of strength that Mr. Benitez ... went in [the baghouse] the way it sounds to me if I were a juror, in a very conscientious way to do a job to make this work right... . If I were a juror in this case, I would decide he didn't know he was misusing this property.
When the trial court made this statement it was referring to evidence which showed that if Mr. Benitez had not left the auger on to constantly remove the dust which fell to the bottom of the hopper as he was raking the baghouse walls, then the auger would have probably malfunctioned when turned on after he had finished raking and exited the baghouse. There was evidence that problems had previously occurred when too much dust was being moved along the bottom of the baghouse by the auger.